No. 25-1312

IN THE

# United States Court of Appeals for the Fourth Circuit

INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY, *et al.*,

*Plaintiffs-Appellees*,

v.

FLORIDA GLASS OF TAMPA BAY, INC., *et al.*,

*Defendants-Appellants*.

On appeal from the United States District Court
for the District of Maryland, No. 1:23-cv-00045-SAG,
Hon. Stephanie A. Gallagher

## REPLY BRIEF FOR APPELLANTS

JOSEPH E. SIMMONS
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201
(214) 855-8000

PETER B. SIEGAL
GREGORY J. OSSI
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
(202) 662-4663
peter.siegal@nortonrosefulbright.com

August 1, 2025

*Counsel for Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ............................................................................1

ARGUMENT ...................................................................................2

    I.     The Arbitrability Ruling Is Erroneous. ...................................2

    II.    The Fund Demanded "Immediate Payment" Of The Claimed
          Amount. .................................................................................8

    III.   The Fund's "Offset" Argument Is Unsupportable. ...........................18

CONCLUSION ...............................................................................20

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Painting & Decorating, Inc. v. Int'l Painters & Allied Trades Indus. Pension Fund,*
107 F.4th 190 (3d Cir. 2024) ...................................................................15

*Americold Logistics, LLC v. New England Teamsters & Trucking Indus. Pension Fund,*
2023 WL 1421646 (D. Mass. Jan. 31, 2023) .........................................5

*Bauwens v. Revcon Tech. Grp., Inc.,*
935 F.3d 534 (7th Cir. 2019) .................................................................7

*Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.,*
522 U.S. 192 (1997) ...........................................................................1, 2

*Bd. of Trs. of Sheet Metal Workers' Nat'l Pension Fund. v. BES Servs.,*
469 F.3d 369 (4th Cir. 2006) .................................................................5

*Cent. States, Se. & Sw. Areas Pension Fund v. Basic Am. Indus., Inc.,*
252 F.3d 911 (7th Cir. 2001) ..........................................................passim

*Cent. States, Se. & Sw. Areas Pension Fund v. Frate Serv., Inc.,*
2017 WL 8792690 (N.D. Ill. Nov. 14, 2017) ......................................17

*Cent. States, Se. & Sw. Areas Pension Fund v. Lady Baltimore Foods, Inc.,*
960 F.2d 1339 (7th Cir. 1992) .............................................................19

*Cent. States, Se. & Sw. Areas Pension Fund v. Nitehawk Exp., Inc.,*
223 F.3d 483 (7th Cir. 2000) ...............................................................19

*Cent. States, Se. & Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.,*
2009 WL 1470011 (N.D. Ill. 2009) .....................................................17

*Centric Corp., In re,*
901 F.2d 1514 (10th Cir. 1990) .............................................................3

*Chicago Truck Drivers v. El Paso Co.,*
525 F.3d 591 (7th Cir. 2008) ...........................................................7, 17

*Crown Cork & Seal Co. v. Cent. States, Se. & Sw. Area Pension Fund,*
881 F.2d 11 (3d Cir. 1989) .....................................................................5

*Flying Tiger Line v. Teamsters Pension Tr. Fund of Phila.,*
830 F.2d 1241 (3d Cir. 1987) .................................................................5

*Giroux Bros. Transp. Co. v. New Eng. Teamsters*,
   73 F.3d 1 (1st Cir. 1996) ................................................................. 5

*Hemingway Transp., Inc., In re*,
   993 F.2d 915 (1st Cir. 1993) ........................................................... 12

*Independent Lift Truck Builders Union v. Hyster Co.*,
   2 F.3d 233 (7th Cir. 1993) ............................................................... 6

*Insilco Techs., Inc., In re*,
   480 F.3d 212 (3d Cir. 2007) ........................................................... 11

*Keyes Law Firm, LLC v. Napoli*,
   120 F.4th 139 (4th Cir. 2024) ......................................................... 6

*Lehr v. Robertson*,
   463 U.S. 248 (1983) ......................................................................... 8

*Manhattan Jeep Chrysler Dodge, Inc., In re*,
   599 B.R. 247 (Bankr. S.D.N.Y. 2019) .................................... 14, 15

*Mason & Dixon Lines, Inc. v. First Nat. Bank of Boston*,
   883 F.2d 2 (4th Cir. 1989) ......................................................... 1, 10

*Mid-Am. Salt, LLC v. Morris Cnty. Coop. Pricing Council*,
   964 F.3d 218 (3d Cir. 2020) ........................................................... 8

*Reynolds v. C.I.R.*,
   861 F.2d 469 (6th Cir. 1988) ................................................ 1, 10, 12

*Sanford, In re*,
   979 F.2d 1511 (11th Cir. 1992) ..................................................... 11

*Statewide Reapportionment Adv. Comm. v. Beasley*,
   99 F.3d 134 (4th Cir. 1996) ........................................................... 19

*Steelworkers Pension Trust v. Renco Group, Inc.*,
   694 F. App'x 69 (3d Cir. 2017) ....................................................... 5

*Teamsters Joint Council No. 83 v. Centra, Inc.*,
   947 F.2d 115 (4th Cir. 1991) ......................................................... 14

*Trustees of IAM Nat'l Pension Fund v. M & K Emp. Sols., LLC*,
   694 F. Supp. 3d 54 (D.D.C. 2023) ................................................. 19

*Varat Enters., Inc., In re*,
   81 F.3d 1310 (4th Cir. 1996) ......................................................... 10

**Rules and Statutes**

11 U.S.C. § 502(b)(1) ........................................................................ 11

11 U.S.C. § 502(c)(1) ........................................................................ 11

11 U.S.C. § 507 ................................................................................................10

29 U.S.C. § 1132(g)(2) ...........................................................................18, 19

29 U.S.C. § 1144(d) ...........................................................................................16

29 U.S.C. § 1399(b)(1) ...........................................................................5, 14, 17

29 U.S.C. § 1401(a) ...............................................................................................2

29 U.S.C. § 1401(b)(1) ..........................................................................................2

29 U.S.C. § 1451(f) ..........................................................................................4, 5

Fed. R. Civ. P. 8(c)(1) ........................................................................................7

## INTRODUCTION

Try though it might, the Fund's 60-plus page brief cannot make this simple case complex. Having *willingly accepted* a lump-sum withdrawal liability payment in Florida Glass's bankruptcy, the Fund cannot now deny having asked for it. After all, it is black-letter law that a "withdrawing employer owes nothing until [the] plan demands payment." *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 202 (1997). And here, what the proof of claim demanded was a dollar figure—$1,577,168—that the proof of claim unambiguously said was the "immediate payment" amount. JA100; JA102; Br. for Appellants ("Br.") 10, 14, 28, 30. It is undisputed that an entirely different amount would have been due under an installment plan.

The Fund never responds to those simple points. Instead, it largely rests its case on a claim that the opening brief was "unable to cite any authority" prohibiting the Fund's about-face. Resp. Br. of Appellees ("Opp.") 45-46. But that claim is demonstrably false. *See* Br. 22-23 (citing, *inter alia*, *Reynolds v. C.I.R.*, 861 F.2d 469, 473 (6th Cir. 1988)); *see also, e.g.*, *Mason & Dixon Lines, Inc. v. First Nat. Bank of Boston*, 883 F.2d 2, 4 (4th Cir. 1989). Apparently, the Fund—which ignores the authority the brief cited—has just concluded it has no answers.

Likely for that very reason, the Fund continues to lean into an unprecedented, Hail Mary arbitrability argument that would nullify the statute of

limitations. That argument fails also. Under the MPPAA's clear terms, the sole effect of the decision not to arbitrate in 2016 and 2017 was to render "the amounts demanded . . . due and owing." 29 U.S.C. § 1401(b)(1); *Bay Area Laundry*, 522 U.S. at 197. There is literally no authority—none whatsoever—for the Fund's argument that the decision had the additional, never-stated-in-the-statute, diametrically opposite effect of foreclosing American Products from ever observing that the amounts were assessed. Indeed, if the Fund's argument were adopted, it would mean the Fund could have brought this same suit 1,000 years from now. The district court itself thus recognized the argument's absurdity. JA162. And while that court contorted itself to try to make sense of things, *see id.*, even the Fund now "agrees" that it failed. Opp. 41 n.16; Br. 20.

The Fund ends its brief by asserting that even if this action is untimely, the Court should still award it damages, attorney's fees, etc. Opp. 60-62. To state that argument is to refute it. American Products thus respectfully requests that the Court reverse and enter final judgment in American Products' favor.

## ARGUMENT

### I.    The Arbitrability Ruling Is Erroneous.

The arbitration issue is numbingly simple. If an employer *wishes to challenge* a purported assessment, the employer must arbitrate that challenge—and it must do so within a few-month window. 29 U.S.C. § 1401(a). An employer who

*does not* wish to challenge an assessment has nothing to arbitrate. Such an employer thus loses the right to challenge the assessment. But that does not mean the MPPAA would permit the employer *to be sued* 1,000 years later. Instead, the MPPAA is pellucid that the employer must be sued (if at all) within six years.

The reason the district court was perplexed by its own decision to the contrary, JA162, is that the Fund's argument is unsupportable. The question whether a suit is untimely simply has nothing to do with arbitration. For instance, as presumably occurs all the time, an employer could decide not to arbitrate because the assessment they received was perfectly, undoubtedly lawful, and any challenge to it would be frivolous. Why on earth would the law penalize that decision? Indeed, it is basic common sense that if that employer were then sued seven or seventy years later, the six-year statute of limitations Congress enacted, which is triggered by the assessment, would bar the suit. *E.g. In re Centric Corp.*, 901 F.2d 1514, 1518 (10th Cir. 1990) ("[A] failure to arbitrate does not waive a defense that the employer does not yet have."); Br. 16. That is obviously not a "loophole." Opp. 41. To the contrary (and as the district court recognized), the loophole is *the Fund*'s position, which would allow suits to be brought years, decades, or centuries beyond the six years Congress mandated.

The two supposedly "obvious" proposals the Fund offers to close the loophole it claims does not exist, Opp 41 & n.16, are transparently nonresponsive.

As should be self-evident, an employer has no reason to ask for (nor any likelihood of getting) "a tolling agreement" stretching into perpetuity for an arbitration they do not want to initiate in the first place. Nor does an employer have reason to initiate such an arbitration and "seek a stay."[1] That is why neither of the Fund's "obvious" proposals was even hinted at below. Instead, the district court attempted to make sense of the Fund's position by a third route: theorizing that the arbitration deadline might not be what the statute says. *See* Br. 20. But even "[t]he Fund agrees" that route is a dead-end too. Opp. 41 n.16.

Perhaps to its credit, the Fund is briefly candid when it denigrates as "spin" the concept that "the passage of time" could ever be a defense to a lawsuit. Opp. 3. Clearly, Congress did not share the Fund's view. *See* 29 U.S.C. § 1451(f). Nor does any precedent support it.[2] As the Fund does not dispute, the lone case the

---

[1] The scenario the Fund suggests the law requires is ludicrous. To preserve the statute of limitations, *every* employer who ever received an assessment would need to initiate arbitration—even if they had no challenge to raise—just to turn around and ask for that arbitration *to be stayed forever* on the off chance an untimely lawsuit was ever brought. Among other issues, if *that* was what Congress wanted, why would it have enacted an arbitration deadline at all? *Cf. id.* at 21 n.8 (trumpeting importance of having arbitrable issues "expeditiously addressed").

[2] The Fund admits its position would create a circuit split. Opp. 31 n.13. And its effort to distinguish the brief's cases, *id.* at 30-32, only confirms that under its proposal, the limitations defense would be dead on arrival whenever contested. Indeed, if the Fund were right, every case in its half-page stringcite, *id.* at 30-31 n.12, would be one in which a plan's lawyers committed malpractice by giving away a dispositive argument with a 100% success rate. That seems rather unlikely.

district court cited involved a challenge to an *assessment* (the archetypal arbitrable issue), not a challenge to the timeliness of a *lawsuit* (the archetypal *non*-arbitrable issue). *See* Br. 20-21 (discussing *Giroux Bros. Transp. Co. v. New Eng. Teamsters*, 73 F.3d 1, 4 (1st Cir. 1996)); *cf.* Opp. 33 n.14.[3] And the Fund's new lead case, *Steelworkers Pension Trust v. Renco Group, Inc.*, is just a different citation with the same exact problem. *See* 694 F. App'x 69, 72-73 (3d Cir. 2017). Both *Giroux* and *Renco*—along with everything else the Fund cites[4]—involved *an employer*'s challenge to an assessment, which of course has to be arbitrated. In this case, the only one challenging the assessment's adequacy is *the Fund*. It is nonsense to say *American Products* had to initiate an arbitration for *the Fund*'s challenge.

---

[3] The Fund's inexplicable contention that there is no difference between the issue in *Giroux* and the issue here, Opp. 33 n.14, is belied by the Fund's own fear of so much as "suggest[ing]" that the statute of limitations is an issue for an arbitrator. *Id.* at 38. And the Fund's claim that *Giroux* applies because the limitations defense "turns *solely*" on section 1399, Opp. 33 n.14, is baffling. *See, e.g.*, *id.* at 5 ("The sole issue presented is whether the District Court properly concluded that this action is not time-barred *under 29 U.S.C. § 1451(f)*.") (emphasis added).

[4] *E.g. Bd. of Trs. of Sheet Metal Workers' Nat'l Pension Fund. v. BES Servs.*, 469 F.3d 369, 374 (4th Cir. 2006) (employer challenged amount of liability); *Crown Cork & Seal Co. v. Cent. States, Se. & Sw. Area Pension Fund*, 881 F.2d 11, 19 (3d Cir. 1989) (same); *Flying Tiger Line v. Teamsters Pension Tr. Fund of Phila.*, 830 F.2d 1241, 1247-48 (3d Cir. 1987) (employer challenged fact of liability); *Americold Logistics, LLC v. New England Teamsters & Trucking Indus. Pension Fund*, 2023 WL 1421646, at *4 (D. Mass. Jan. 31, 2023) (same)

The Fund's assertion that "[t]his case is not about jurisdiction but *judicial restraint*," Opp. 34, is equally unsupportable. It is not "restraint" to nullify duly enacted statutes to grant relief Congress said should be time-barred. Moreover, the Fund ignores this Court's decision in *Keyes Law Firm, LLC v. Napoli*, 120 F.4th 139, 144 (2024), which explains that "the most basic premises of our judicial structure" rest on the rule that "when a court has jurisdiction it has a right to settle every question which occurs in the case." Br. 17. Same for *Independent Lift Truck Builders Union v. Hyster Co.*, 2 F.3d 233, 236 (7th Cir. 1993), which holds that if a court must reach otherwise-arbitrable sub-issues to resolve a question properly before it, then "so be it." Br. 16-17. The Fund's new abstention theory is not merely made up out of nowhere, but in square contravention of those cases.

The Fund's effort to reconcile its position with statutory text is just as feeble. *See* Br. 17-18 (discussing Fund's and district court's failure to identify any arbitrable "determination"). The Fund now says it made a "determination" subject to arbitration when it "issu[ed] the March 2022 demand and fil[ed] the complaint in this action without mentioning" the proof of claim. Opp. 36-37. But even if that were true, it is immaterial. As the opening brief explained (now without refutation), nothing that happened *in 2022* could possibly be relevant, because it is undisputed—and beyond dispute—that the time to arbitrate issues surrounding *the proof of claim* ended in 2017 at the latest. *E.g.*, Br. 18-19. Put differently, if the

6

Fund wants to argue that American Products had to arbitrate, it must establish that American Products had to arbitrate *in 2016 or 2017*. Yet despite apparently understanding that very fact, *see* Opp. 10 n.2, it does not even try to make the requisite showing. Nor could the Fund avoid the six-year statute by purporting to demand the same withdrawal liability a second time. *E.g.*, *Bauwens v. Revcon Tech. Grp., Inc.*, 935 F.3d 534, 539-40 (7th Cir. 2019).[5]

The Fund's page-after-page focus on *American Products'* purported state of mind, *e.g.*, Opp. 1, 3-4, 20, 24, 26, 34-38, 48 n.17, 49-50, also misses the point completely. To the extent American Products formed any relevant views before being sued, the record is silent thereon. The Fund effectively concedes the point. *See id.* at 38-39 (hypothesizing without citation). Nor would such views be relevant anyway. Neither the arbitration requirement nor the statute of limitations has any state-of-mind component, and (notwithstanding the Fund's near-constant accusations) American Products is certainly not claiming one. Moreover, it is basic civil procedure, not "sandbag[ging]," "blindsiding," or "tactical gamesmanship," Opp. 24, 38-40, 50, to raise a limitations defense only after one is sued. Fed. R.

---

[5] As likely goes without saying, *Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591, 602 (7th Cir. 2008), provides no support whatsoever for the Fund's made-up arbitration theory. *Cf.* Opp. 37. Indeed, to the extent that (as the Fund says) that theory now requires "dispel[ling] the notion that the contingent proof of claim was a demand for accelerated withdrawal liability," *id.*, it collapses entirely into the merits question anyway.

7

Civ. P. 8(c)(1); *Lehr v. Robertson*, 463 U.S. 248, 265 n.23 (1983) ("It is a generally accepted feature of our adversary system that a potential defendant who knows that the statute of limitations is about to run has no duty to give the plaintiff advice.").

## II.    The Fund Demanded "Immediate Payment" Of The Claimed Amount.[6]

As the opening brief explained, the proof of claim was an assessment and acceleration as a matter of both law and undisputed fact. Br. 21-31.

1. Bluster and ad hominems aside, the Fund largely fails to dispute the opening brief's discussion. Most notably, it never disagrees that the question whether the proof of claim was an assessment and acceleration must be adjudged by *objective* indicia. Br. 10, 25-26 (citing, *inter alia*, *Mid-Am. Salt, LLC v. Morris Cnty. Coop. Pricing Council*, 964 F.3d 218, 225 (3d Cir. 2020)); Opp. 43, 47, 55-56. That concession confirms the absolute irrelevance of enormous swaths of the Fund's brief—and virtually all of the district court's analysis. After all, on page after page, the Fund invokes its own supposed intentions and subjective beliefs while denigrating those it ascribes—largely without support—to American

---

[6] As any law student more than a few days in would know, it is beyond good-faith argument for the Fund to suggest that because the proof of claim's existence and contents are not alleged in the Fund's complaint, the Court can or should ignore them. *Cf.* Opp. 1. This is an appeal from a final, summary judgment *against a defendant*, not a Rule 12(b) dismissal against a plaintiff, *e.g.*, Br. 15, and those are matters of undisputed fact to which the Fund itself agreed below, *e.g.*, JA047.

Products.[7] But none of that discussion matters at all. What matters is what the document said on its face. *E.g.*, Br. 10, 25-26 (citing law). And with trivial exceptions—most notably an unsupportable, tossed-off argument that the proof of claim had to incant the precise words "demand" and "accelerate" to trigger the statute, Opp. 43, 56; *but see, e.g.*, Br. 21—the only *objective* consideration the Fund invokes is its answer to question eight out of twelve on the claim form, which has thus become the Fund's entire case.[8]

2. To begin, the Fund's answer to that question is no response to estoppel. As the opening brief explained—and the Fund scarcely attempts to refute— willingly accepting a roughly $50,000 lump-sum payment from Florida Glass's bankruptcy estate forecloses the Fund from now claiming it never asked for that money. The Fund says the opening brief was "unable to cite any authority" to support that commonsense conclusion, Opp. 45, but as noted, the Fund's assertion is demonstrably false. The brief comprehensively showed that acceptance of a

---

[7] *E.g.*, Opp. 17-18, 22-24, 36-37, 46-47 (asserting, *inter alia*, that the proof of claim was filed "by an associate" who lacked relevant experience; that Jennings Sigmond's "purpose" was not to notice, demand, or accelerate; and that the Fund's trustees "were not consulted" and "did not take a vote"); *see also supra* at 7.

[8] The district court invoked another objective consideration: that of to whom the proof of claim was sent. JA163. But the Fund does not dispute that standing alone, that consideration—which was critical to the district court's reasoning—is completely irrelevant. Br. 23-24; Opp. 46.

bankruptcy distribution estops the recipient from later arguing the distribution should not have been made. Br. 22-23 (citing, *inter alia*, *Reynolds*, 861 F.2d at 473 ("[W]hen a bankruptcy court—which must protect the interests of all creditors—approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that . . . is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position.")); *see also, e.g.*, *In re Varat Enters., Inc.*, 81 F.3d 1310, 1317 (4th Cir. 1996) (explaining that estoppel "applies in the bankruptcy context" and setting forth elements, all of which are satisfied here); *Mason & Dixon*, 883 F.2d at 4. The Fund does not even attempt to address the authority so holding.

The Fund's effort to brush off as "small" or "nominal" the $50,000 in withdrawal liability it accepted, Opp. 21, 43, 45, also fails. As the Fund does not dispute, it is entirely routine for a bankruptcy creditor to receive less than the full amount they would have been owed outside bankruptcy. *See generally* 11 U.S.C. § 507 (establishing priority for payment of claims in bankruptcy). Indeed, the Fund nowhere denies that "if there had been sufficient funds in Florida Glass's bankruptcy estate, *the Fund would have been paid the entire amount of its claim*: $1,577,168." Br. 10 (emphasis added). How, then, can the Fund possibly say it never asked for it? While the fact that the Fund's recovery was only partial (and the remaining debt was not discharged, Opp. 21-22) may have entitled the Fund to

pursue an additional lawsuit *within* six years, it does nothing to demonstrate that the Fund never demanded the lump sum it received. After all, what the law obviously does not permit is for someone who makes *no claim they are owed money* to receive a distribution at the expense of other creditors. *E.g.*, *In re Insilco Techs., Inc.*, 480 F.3d 212, 216 (3d Cir. 2007).

For the same reasons, the Fund cannot get away with just claiming that the assessment/acceleration and the bankruptcy distribution "are separate issues." Opp. 45-46. *Bankruptcy* law was not the source of the Fund's claimed entitlement to Florida Glass's money; *the MPPAA* was. *E.g.*, *In re Sanford*, 979 F.2d 1511, 1513 (11th Cir. 1992) (claims in bankruptcy must arise from rights that existed "outside of bankruptcy"). If the Fund did not have a right to the $50,000 *under that statute*, then it did not have any right to it at all.

Nor is the Fund's mantra that the distribution was somehow someone else's fault—*i.e.*, that Florida Glass should have objected to the claim, or the Trustee "bur[ied] h[er] head in the sand"—either correct or relevant. *E.g.*, Opp. 21, 45, 48-49; JA163. There was nothing to object to, because as even the Fund concedes, *contingency isn't a ground* for disallowing a claim. Opp. 15; *see also, e.g.*, 11 U.S.C. § 502(b)(1) (claim may be disallowed if unenforceable, but only if unenforceability is "for a reason other than because such claim is contingent or unmatured"). Instead, contingent claims are allowable and payable, but must be

discounted "to reflect . . . the contingency," *see* 11 U.S.C. § 502(c)(1); *In re Hemingway Transp., Inc.*, 993 F.2d 915, 923 (1st Cir. 1993), which did not occur here because *the Fund*'s vague, at best contradictory form failed to alert the Trustee that the liability was anything other than "FINAL." JA102; JA113 ("There was no inkling of what would make this claim contingent[.]").[9] In all events, the Fund's fingerpointing is nonresponsive. When it comes to estoppel, what matters is that *the Fund accepted* the $50,000; why it was *sent* is irrelevant. *E.g.*, *Reynolds*, 861 F.2d at 473. The Fund fails to offer *any explanation* of how the position it is taking in this case can be reconciled with its acceptance of that money.

3. Even setting estoppel aside, the question-eight answer cannot bear the weight the Fund piles onto it. Br. 24-26. Indeed, on that issue also, the Fund concedes much of the opening brief's discussion.

To begin, the Fund agrees it never specified what was supposedly contingent about the liability. Br. 10. The Fund attempts to explain that failure by asserting that there was no "space" on the form, Opp. 48, but that is unserious. In reality, the form instructed each claimant to attach "any documents supporting the claim,"

---

[9] The Fund's effort to sling mud at the Trustee, Opp. 48-49, takes some audacity. On *the Fund's own version of the facts*, it was *the Fund*, not the Trustee, that failed to "investigate"—and thus was wrong about—"whether liability had in fact been triggered." *Id.* at 49; *see also infra* 13 n.10. And the reason the Trustee did not "[c]ontact the Fund's attorney and request an explanation," Opp. 48, is that, as noted, the proof of claim did not put her on notice there was anything to ask about.

JA100, and the Fund included typewritten addenda, JA102-104; *see specifically* JA103 ("625838_1.docx"). In all events, excuses are beside the point. What matters is that factoring in the Fund's statements that the liability was "FINAL," the Fund was "the current creditor," and payments should be made to the Fund's lawyer, etc., JA099-102; Br. 30, the claim form as a whole was inadequate to convey that the Fund was supposedly not asserting an immediate right.

It is also undisputed that if anyone had actually noticed the supposed contingency alluded to in response to question eight of twelve and looked into it, *they would necessarily have concluded that it did not exist*. *E.g.*, Br. 10, 26. Read closely, the pearl-clutching footnote in which the Fund *pretends* to dispute that point, *cf.* Opp. 49 n.18, turns out to be devoid of substance. The Fund does not deny that withdrawal had occurred when it filed the proof of claim. *Id.* Nor does it deny that the bankruptcy docket so revealed to anyone who looked. *Id*.[10]

Instead, all the Fund is saying is that *the Fund itself* did not do the work to "*learn of*" the withdrawal until years later. Opp. 49 n.18 (emphasis added); *see also, e.g.*, *id.* at 16, 17, 19 (similar). And given that the Fund well knows the

_____

[10] Every mention of the building and construction exemption is thus a pure red herring. *Cf. id.* at 15 (asserting, irrelevantly, that *in some cases*, withdrawal "may not be" ascertainable until years after it occurs); *see also id.* at 9-10, 17, 22, 48. The Fund does not dispute now, and has openly admitted elsewhere, that *American Products' withdrawal was complete and fully knowable as of the date the proof of claim was filed*. Br. 10 (citing JA148-149).

difference between a genuinely "unripe" withdrawal liability obligation and a mere "unknown" one, *id.* at 16, that assertion is another subjective-state-of-mind irrelevancy, *see supra* at 8-9 & n.7, that is neither inconsistent with nor responsive to anything the opening brief said. *E.g.*, Br. 10, 24-26. The *objective* indicia amply supported the Trustee's conclusion that the Fund (which had access to the bankruptcy docket and should thus have known of the withdrawal) was claiming an immediate entitlement to the money. *See supra* at 12-13 & n.9. If that was not in fact so, the Fund was free to decline the distribution, which it did not.

The Fund's heavy reliance on *In re Manhattan Jeep Chrysler Dodge, Inc.*, which the Fund claims compelled it to file the proof of claim, likewise has nothing to do with the issues here. *See* Opp. 15-16, 18 n.6, 44, 49 n.18 (citing 599 B.R. 247 (Bankr. S.D.N.Y. 2019)).[11] Again, the statute of limitations bars *lawsuits*, not assessments, not proofs of claim, not demand letters. *Contra* Opp. 23 (asserting, irrelevantly, that the "March 2022 demand letter was sent well within" the statute). No one is faulting the Fund for having filed the proof of claim, which, after all, it was required to file "[a]s soon as practicable after" the "withdrawal" occurred. 29

---

[11] The Fund's suggestion that "this Court's decision in *Teamsters 83*" refutes the notion that a proof of claim can *ever* be an assessment/acceleration, Opp. 44-45, is categorically false. *See Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 117 (1991).

U.S.C. § 1399(b)(1). Instead, what the Fund principally did wrong was to sue more than six years thereafter. *Manhattan Jeep* did not compel it to do that.

The Fund's various other 'this is what we always do' arguments, *e.g.*, Opp. 17-18, 46-47, are equally off-base. As one other court of appeals has recognized, what *this* Fund 'always does' is often inconsistent with its obligations under the statute. *Allied Painting & Decorating, Inc. v. Int'l Painters & Allied Trades Indus. Pension Fund*, 107 F.4th 190, 194 (3d Cir. 2024) (noting the Fund's longstanding practice of "not rigorously track[ing] . . . withdrawals," and denying a claim for withdrawal liability the Fund waited 12 years to assess). In all events, assessment and acceleration are questions of federal law, which does not change merely because a plan or Jennings Sigmond associate steps over the line.

4. On the question of acceleration also, what the Fund does not dispute renders it unnecessary to dwell on what it does. Specifically, despite urging the Court to reject *the only on-point circuit precedent that exists* (and to do so on the dubious ground that the Seventh Circuit supposedly "misconstrued its own" cases), Opp. 44, the Fund nowhere responds to the opening brief's showing—let alone *Basic American*'s observation—that the concept of installment payments is fundamentally inconsistent with bankruptcy. *See* Br. 27-28 (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Basic Am. Indus., Inc.*, 252 F.3d 911, 917-18 (7th Cir. 2001)). Nor does the Fund dispute that in the event of a conflict, the

15

bankruptcy code prevails over the MPPAA. Br. 28 (citing 29 U.S.C. § 1144(d)). Those two undisputed fundamentals are not "convoluted," *cf.* Opp. 1, 60, and they are all the Court needs to resolve this appeal. Put simply, *outside* bankruptcy, a plan can choose to accelerate or not; *in* bankruptcy, a demand for money is a demand for a lump-sum payment just like the one the Fund eventually received.[12]

In this case, moreover, the Court need not even opine on such broader legal questions. As the Fund does not dispute, the proof of claim demanded a dollar amount—$1,577,168—that corresponded only to one number on the payment schedule: the "immediate payment" amount. Br. 8-9. And an entirely different amount, $1,627,538, was described in the same document as the "total [amount] of the *monthly* payments." JA102 (emphasis added). There is nothing "out of context" about that observation, *cf.* Opp. 59-60, which demonstrates that acceleration occurred as a matter of law irrespective of anything *Basic American* holds.

Nor was the inclusion of a payment schedule—particularly *this* payment schedule, with the "immediate payment" amount matching the demand—in any way inconsistent with acceleration. *Cf.* Opp. 56-58. Much less is there any basis to create a circuit split on that issue. *See Basic American*, 252 F.3d at 918. As the

---

[12] Inexplicable insinuations to the contrary notwithstanding, Opp. 12 n.3 (accusing appellants of "pretend[ing]"), the Fund expressly concedes that Florida Glass's bankruptcy filing entitled the Fund to accelerate. *Id.* at 19; Br. 30.

Fund itself argues, Opp. 50-52, acceleration cannot occur in the absence of notice/demand, which undisputedly requires inclusion of a schedule. *See, e.g.*, 29 U.S.C. § 1399(b)(1). The 'specific governs the general' canon is thus utterly irrelevant, as are the unpublished, out-of-circuit, outside-bankruptcy district court cases the Fund cites. *Cf.* Opp. 57.[13] Neither case refutes *Basic American*, and neither involved a proof of claim demanding only the "immediate payment."[14] In all events, the Fund cannot stretch the statute of limitations into perpetuity by pointing to some nit in its own acceleration notice. *E.g.*, *Truck Drivers*, 525 F.3d at 602; Br. 29.[15]

That the Fund checked the "includes interest" box, Opp. 58-59, also does not help the Fund. Again, it is undisputed that the amount demanded in the proof of

---

[13] *See Cent. States, Se. & Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.*, 2009 WL 1470011, *2 (N.D. Ill. 2009) (no "single payment" option at all); *Cent. States, Se. & Sw. Areas Pension Fund v. Frate Serv., Inc.*, 2017 WL 8792690, *2 (N.D. Ill. Nov. 14, 2017) (acceleration *occurred*).

[14] *Basic American* did not, as the Fund claims, "acknowledge[] that the plan's demand for installment payments shows that it didn't think the employer had defaulted." Opp. 56. To the contrary, it said that very argument "would not have succeeded even if it had been made." 252 F.3d at 918.

[15] The Fund's suggestion that *Truck Drivers* is "definitely wrong," Opp. 53, rests on a false characterization of that case. *Truck Drivers* is entirely consistent with *Bay Area*'s holding that whether a plan accelerated is dispositive; it merely rejects the notion that a plan can evade the statute of limitations by nitpicking (or deriding as "contradictory," Opp. 56) *its own notice*. *See also supra* at 7 n.5.

claim ($1,577,168, *see* JA100) matched *only* the "immediate payment" amount, *see* JA102, which of course (and undisputedly) did *not* include interest. *See, e.g.*, Opp. 20, 58-59. Thus, *no one* in this case—not American Products, not the Fund— has made sense of why the "includes interest" box was checked, much less shown that it matters. On this record, the only available conclusion is that the "associate attorney of Jennings Sigmond" who filled out the form, *id.* at 17, made a mistake.

The Fund's sole remaining argument is just another attempt at trickery. Specifically, the Fund claims this suit is timely under *Basic American* because in that case, the proof of claim was not what triggered the limitations period. Opp. 55. But the reason for that was simply—unambiguously—that the proof of claim there was filed before the employer withdrew, so the trigger could only be a subsequent demand. 252 F.3d at 916-18. Here, as explained, it is undisputed that withdrawal occurred before the proof of claim was filed. *See supra* at 13. There is nothing "inexplicabl[e]," Opp. 55 n.21, about that obvious application of the holding.

## III.    The Fund's "Offset" Argument Is Unsupportable.

The Fund's contention that it is entitled to relief under 29 U.S.C. § 1132(g)(2) *even if this suit is time-barred*, Opp. 60-62, does not pass the straight-face test. That provision applies only when "a judgment *in favor of the plan* is awarded," § 1132(g)(2) (emphasis added), which of course it cannot be if this suit is untimely.

Contrary to the Fund's argument, the erroneous judgment the district court entered does not change that conclusion. *Cf.* Br. 31-32; Opp. 27 n.11, 61. It is black-letter law that a "judgment's vacatur on appeal renders it a legal nullity." *Statewide Reapportionment Adv. Comm. v. Beasley*, 99 F.3d 134, 136 (4th Cir. 1996). If the district court's judgment was wrong and is vacated or reversed, it obviously cannot support an award of damages, attorney's fees, or anything else in the Fund's favor.

Unsurprisingly, the Fund's cited cases are in no way to the contrary. Those cases hold only that if a plan receives a *valid* judgment on an interim issue—typically an employer's failure to comply with the MPPAA's "pay now, dispute later" rule—that *valid* judgment can trigger section 1132(g)(2) even if the plan loses a later dispute over the ultimate withdrawal liability.[16] Here, however, there is undisputedly no interim judgment (nor is there a timely suit that could support one); quite the contrary, it is undisputed that American Products *voluntarily* paid

---

[16] *See Cent. States, Se. & Sw. Areas Pension Fund v. Nitehawk Exp., Inc.*, 223 F.3d 483, 496 (7th Cir. 2000); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339, 1347 (7th Cir. 1992) (employer who fails to pay withdrawal liability pending arbitration and is ordered to do so must pay liquidated damages, even if employer ultimately wins eventual arbitration); *Trustees of IAM Nat'l Pension Fund v. M & K Emp. Sols., LLC*, 694 F. Supp. 3d 54, 90 (D.D.C. 2023) (similar).

$1,230,000 in interim withdrawal liability and interest. JA167; JA175. American

Products is entitled to return of those amounts in full, with interest.

## CONCLUSION

American Products respectfully requests that the judgment be reversed and

judgment entered in American Products' favor.

Respectfully submitted,

*/s/ Peter B. Siegal*

JOSEPH E. SIMMONS
NORTON ROSE FULBRIGHT
US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201
(214) 855-8000

PETER B. SIEGAL
GREGORY J. OSSI
NORTON ROSE FULBRIGHT US LLP
799 9th Street, N.W., Suite 1000
Washington, D.C.  20001
(202) 662-4663
peter.siegal@nortonrosefulbright.com

August 1, 2025

*Counsel for Appellants*

20

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,217 words, excluding the items exempted by Fed. R. App. P. 32(f). This document complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.

August 1, 2025

*/s/ Peter B. Siegal*
Peter B. Siegal
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
(202) 662-4663
peter.siegal@nortonrosefulbright.com

*Counsel for Appellants*